```
           IN THE UNITED STATES DISTRICT COURT
          FOR THE SOUTHERN DISTRICT OF ALABAMA
                     SOUTHERN DIVISION
```

| | |
|---|---|
| **LINDA G. CHAMBLISS,** | * |
| Plaintiff, | * |
| vs. | *   CIVIL ACTION 07-00360-KD-B |
| **MICHAEL J. ASTRUE,** **Commissioner of** **Social Security,** | * |
| Defendant. | * |

## REPORT AND RECOMMENDATION

Plaintiff Linda G. Chambliss ("Plaintiff") brings this action seeking judicial review of a final decision of the Commissioner of Social Security denying her claim for period of disability and disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 <u>et seq</u>. This action was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  The parties waived oral argument, and requested that the case be decided on their respective briefs.  (Doc. 18). Upon careful consideration of the administrative record and the parties' briefs, it is **RECOMMENDED** that the decision of the Commissioner be **REVERSED and REMANDED.**

### I.   Procedural History

Plaintiff filed applications for a period of disability and disability insurance benefits on March 7, 2005, alleging that she has been disabled since January 1, 2003, due to arthritis,

irritable bowel syndrome, severe migraine headaches, and nerves. (Tr. 38-40, 50-51). Plaintiff's application was denied initially, and she filed a timely Request for Hearing before an Administrative Law Judge ("ALJ"). (Tr. 27, 29). On September 25, 2006, Administrative Law Judge Alan E. Michel ("ALJ Michel") held an administrative hearing which was attended by Plaintiff, her representative and vocational expert James Cowart. (Tr. 262-282). On September 13, 2007, the ALJ entered an unfavorable decision finding that Plaintiff is not disabled. (Tr. 3, 8-18). Thereafter, the Appeals Council ("AC") denied Plaintiff's request for review on March 28, 2007; thus, the ALJ's decision became the final decision of the Commissioner in accordance with 20 C.F.R. § 404.981. (Tr. 3-5). The parties agree that this case is now ripe for judicial review and is properly before this Court pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

**II.  Issues on Appeal**

A.   Whether the ALJ erred by failing to address Plaintiff's mental limitations in accordance with 20 C.F.R. §§ 404.1520a and 416.920a.

B.   Whether the ALJ erred by finding that Plaintiff can perform a full range of light work.

**III. Factual Background**

Plaintiff was born on October 31, 1951, and was 54 years old at the time of the administrative hearing. (Tr. 46, 262, 270). Plaintiff has a 12th grade education and past work experience as the

owner of a game room.  (Tr. 51, 55, 72, 94, 270, 273-274). According to Plaintiff, her work in the game room involved "making change." (Tr. 273).  Plaintiff testified that she became disabled and stopped working on January 1, 2003.  Plaintiff asserts that she is disabled due to back pain, arthritis, irritable bowel syndrome, headaches and "nerves." (Tr. 50, 276).

With respect to her daily activities, Plaintiff testified that she is able to care for her personal needs such as bathing and dressing herself. Plaintiff also testified that she prepares her own food, generally sandwiches, performs light housekeeping, such as making her bed and washing her clothes, and that she is able to drive once or twice a week to her various appointments.  (Tr. 275-276).  Plaintiff further testified that she spends most of the day reading.  (Tr. 278)

According to Plaintiff, her rheumatoid arthritis distorts her shoulders and finger, and her osteoarthritis makes her joints hurt and makes it difficult for her to sit or stand very long (Tr. 277-278).  Plaintiff testified that she takes prescribed medications for her various ailments, and that the medications have helped her. (Tr. 272). Plaintiff's medications have included Lunesta, Alprazolam, Cyclobenzaprine, ASA, Hydroxychlor, Zocor, Dicyclomine, Synthoid, Premarin, Zetia, Crestor, Hyoscyamine, Tricor, Pravachol, Dicyclomine, Klonopin, Xanax, Clonazepam, Celebrex, and Bextra. (Tr. 93, 129, 139, 152, 154, 157, 160, 168, 170, 174, 177, 178, and

180).

## IV. Analysis

### A. Standard of Review

In reviewing claims brought under the Act, this Court's role is a limited one. The Court's review is limited to determining 1) whether the decision of the Secretary is supported by substantial evidence and 2) whether the correct legal standards were applied. Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990).[1] A court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986). The Commissioner's findings of fact must be affirmed if they are based upon substantial evidence. Brown v. Sullivan, 921 F.2d 1233, 1235 (11th Cir. 1991); Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (holding that substantial evidence is defined as "more than a scintilla but less than a preponderance" and consists of "such relevant evidence as a reasonable person would accept as adequate to support a conclusion[]"). In determining whether substantial evidence exists, a court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's decision. Chester v. Bowen, 792 F. 2d 129, 131 (11th Cir. 1986); Short v. Apfel, 1999 U.S. DIST. LEXIS 10163 (S.D. Ala.

---

[1] This Court's review of the Commissioner's application of legal principles is plenary. Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).

4

1999).

B. **Discussion**

An individual who applies for Social Security disability benefits must prove his disability. 20 C.F.R. §§ 404.1512, 416.912. Disability is defined as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 404.1505(a), 416.905(a). The Social Security regulations provide a five-step sequential evaluation process for determining if a claimant has proven her disability. 20 C.F.R. §§ 404.1520, 416.920.[2]

---

[2] The claimant must first prove that he or she has not engaged in substantial gainful activity. The second step requires the claimant to prove that he or she has a severe impairment or combination of impairments. If, at the third step, the claimant proves that the impairment or combination of impairments meets or equals a listed impairment, then the claimant is automatically found disabled regardless of age, education, or work experience. If the claimant cannot prevail at the third step, he or she must proceed to the fourth step where the claimant must prove an inability to perform their past relevant work. Jones v. Bowen, 810 F.2d 1001, 1005 (11th Cir. 1986). In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; (4) the claimant's age, education and work history. Id. at 1005. Once a claimant meets this burden, it becomes the Commissioner's burden to prove at the fifth step that the claimant is capable of engaging in another kind of substantial gainful employment which exists in significant numbers in the national economy, given the claimant's residual functional capacity, age, education, and work history.

In case sub judice, the ALJ determined that Plaintiff met the nondisability requirements for a period of disability and disability insurance benefits and was insured for benefits through December 31, 2004, but not thereafter. (Tr. 16-28). The ALJ concluded that Plaintiff has not engaged in substantial gainful activity from January 1, 2003, her alleged disability onset date, through December 31, 2004. Id. The ALJ determined that while Plaintiff has the severe impairments of high cholesterol, hypothyroidism, osteoarthritis, spastic bowel syndrome, and anxiety, they do not meet or medically equal the criteria for any of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1, Regulations No. 4. Id. The ALJ found that the Plaintiff's allegations were not credible in light of the history of her medical treatment, particularly the comprehensive reports from Dr. Brown, her treating physician. Id. The ALJ further concluded that, through December 31, 2004, Plaintiff retained the residual functional capacity ("RFC") to lift and carry up to 20 pounds, and to frequently lift and carry 10 pounds; to sit, stand or walk up to two hours at a time and six hours total in a workday; and to push and pull with her upper and lower extremities without limits. He also found that she

---

Sryock v. Heckler, 764 F.2d 834 (11th Cir. 1985). If the Commissioner can demonstrate that there are such jobs the claimant can perform, the claimant must prove inability to perform those jobs in order to be found disabled. Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999). See also Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing Francis v. Heckler, 749 F.2d 1562, 1564 (11th Cir. 1985)).

had no postural, manipulative, visual, communicative, or environmental limitations, and that she was able to return to her past relevant work as the owner and operator of a game room. Thus, she is not disabled. Id.

The relevant evidence[3] reveals that Plaintiff was treated by Hayse Boyd, M.D., in March of 1995 for pain in her foot. On examination, Dr. Boyd notes that Plaintiff's nerves are bad and that she has osteoarthritis. He referred Plaintiff to a podiatrist. (Tr. 108-109). During a October 29, 1997 visit to Stephen D. Browne, M.D., Plaintiff reported that she passed out while sitting on the toilet. She also reported that she smoked a pack of cigarettes a day, and requested assistance quitting. Plaintiff was diagnosed with cardiac arrythmia and chronic obstructive pulmonary disorder ("COPD"). (Tr. 104-105).

Treatment notes from Dr. Browne show that in July of 1998, Plaintiff reported that her leg was hurting, and in August and October of 1998, she requested a prescription for Wellbutrin as an aid to stop cigarette smoking, and reported leg soreness. In August of 1998, she is diagnosed with COPD and high cholesterol. (Tr. 214-216). On March 19, 1999, Plaintiff reported that she cries and

---

[3]While the undersigned has examined all of the medical evidence contained in the record, including that which was generated before Plaintiff's alleged onset date, as well as that which was generated after the date she was last insured, only that evidence which is relevant to the issues before the Court is included in the summary.

7

needs stronger hormones. Dr. Browne increased her dose of Premarin, and noted that he was " not sure this is hormonal." An office note dated March 29, 1999 reflects that Plaintiff reported that Xanax has helped some, but she still cannot talk without crying, and has not slept much. Dr. Browne diagnosed Plaintiff with depression and high cholesterol. (Tr. 210). In April of 1999, Plaintiff reported that she felt better, and indicated that she liked the Xanax better than Klonopin because it helped to decrease her cigarette smoking. (Tr. 206). Plaintiff was prescribed Klonopin in April and May of 1999, and in October of 1999, she reported "doing good." She was diagnosed with fibromyalgia and high cholesterol (Tr. 195, 203).

In February of 2000, Plaintiff reported problems with her "nerves." She was diagnosed with fibromyalgia and high cholesterol, and was prescribed Zocor and Xanax. (Tr. 203). During her yearly exam on August 7, 2000, Plaintiff reported a knot behind her left ear, cramps in her legs and knees, and mid-back pain. Her physical exam was normal but back pain was noted. She was diagnosed with high cholesterol, muscle spasm, and back pain. (Tr. 200). Plaintiff presented to the emergency room on September 22, 2000, complaining of pain in the back of her head and back. A CT of her head showed minimal focal sinusitis in the mid left ethmoid sinus. (Tr. 195, 196).

Dr. Browne's treatment notes dated September 29, 2000 reflect that Plaintiff reported that her toes, lower left arm and fingers

were tingling, and she felt like she had been drugged. She indicated that her head felt "funny" and "not right." Plaintiff's exam was normal, and Dr. Browne diagnosed her with high cholesterol and anxiety. (Tr. 194). During her December 7, 2000, Plaintiff reported feeling good. She also reported a knot behind her left ear. She was diagnosed with high cholesterol and knot behind her left ear, and was referred for an Ears, Nose, and Throat evaluation. (Tr. 192).

Dr. Browne's Office notes dated May 21, 2001 show that Plaintiff reported that she felt light-headed, and that her heart felt like it was "running away" at times. She was diagnosed with high cholesterol. (Tr. 191). During a September 24, 2001 office visit, Plaintiff reported an upper respiratory infection and lesions on her right hand and arm. Her physical exam was normal, but lesions on her left hand and arm were noted. Dr. Browne diagnosed her with stable high cholesterol and skin lesions. (Tr. 189).

On January 28, 2002, Plaintiff reported that her heart was skipping, and that she experienced light-headedness the prior night, which lasted about an hour. Her physical exam was normal, and Dr. Browne diagnosed her with high cholesterol, hypothyroidism and osteoarthritis. (Tr. 184). During her next visit to Dr. Browne on June 3, 2002, Plaintiff reported medication side effects and right shoulder pain with decreased range of motion. She also reported that her "bones hurt," and that she did not feel good. Dr.

Browne diagnosed her with tendinitis, high cholesterol that was stable, insomnia, and hypothyroidism. (T. 181). On November 11, 2002, Plaintiff's physical exam was normal, and she was diagnosed with stable osteoarthritis, stable high cholesterol, and stable hypothyroidism. (Tr. 179).

Dr. Browne's treatment notes dated July 28, 2003 reflect that Plaintiff's physical exam was normal. He diagnosed her with stable high cholesterol, stable hypothyroidism, and stable osteoarthritis. (Tr. 175). On December 1, 2003, Plaintiff reported incontinence. Her physical exam was normal, and she was diagnosed with stable osteoarthritis, stable high cholesterol, stable hypothyroidism and spastic bowel. (Tr. 171).

On March 5, 2004, Plaintiff reported that her IBS was worse, with vomiting, and that she had passed out two nights before. She was diagnosed with spastic bowel, stable hypothyroidism, and stable high cholesterol. (Tr. 167). An abdominal x-ray dated March 4, 2004 showed no acute abnormality. (Tr. 164). Plaintiff called Dr. Browne's office on September 29, 2004 to request Wellbutrin to help her quit smoking. Dr. Browne's treatment records reflect that on March 4, 2005, Plaintiff asked to be changed back to Xanax because Klonopin made her sleepy. (Tr. 162).

During her February 21, 2005 visit, Plaintiff reported nerve problems, problems sleeping and arthritis in her back. Her physical exam was normal, and Dr. Browne diagnosed her with menopause, high

cholesterol, and osteoarthritis. (Tr. 161). Plaintiff reported on June 27, 2005 that she was feeling good. Dr. Browne noted that her physical exam was normal and diagnosed her with stable hypothyroidism, stable high cholesterol, stable spastic bowel, and osteoarthritis. (Tr. 153). On September 28, 2005, Plaintiff asked Dr. Browne for a referral to a psychiatrist. (Tr. 146). The treatment records reflect that Plaintiff had a check-up on October 24, 2005, and that her physical exam was normal. She was diagnosed with hypothyroidism and stable high cholesterol. (Tr. 148). Plaintiff's physical exam on March 13, 2006 was normal, and she was diagnosed with hypothyroidism, high cholesterol, and spastic bowel, all of which were stable, and with osteoarthritis. (Tr. 145).

In a letter dated April 3, 2006, Dr. Browne opined that Plaintiff had physical and mental problems that made her unable to serve on jury duty. (Tr. 142). A treatment note dated April 17, 2006 reflects that Plaintiff was going through a divorce and was mentally unstable. (Tr. 140). Treatment notes from Plaintiff's annual exam dated August 30, 2006 show that her physical exam was normal. Dr. Browne diagnosed Plaintiff with hypothyroidism, high cholesterol, and spastic bowel, noted as stable. (Tr. 251).

1. **Whether the ALJ erred by failing to address Plaintiff's mental limitations in accordance with 20 C.F.R. §§ 404.1520a.**

Plaintiff contends that the ALJ erred by failing to properly evaluate her mental impairments because he failed to either attach

a Psychiatric Review Technique Form ("PRTF") or use the special technique of Sections 404.1520a and 416.920a to evaluate same, such that remand is required under <u>Moore v. Barnhart</u>, 405 F.3d 1208 (11th Cir. 2005). In his response, the Commissioner acknowledges that the ALJ did not perform the special technique required by 404.1520a, but argues that the omission was harmless error. According to the Commissioner, the ALJ erred in finding that Plaintiff's anxiety was a severe impairment because there was no evidence that it caused any limitations or that it lasted for twelve or more months. The Commissioner asserts that having determined that Plaintiff retained the residual functional capacity to perform the full range of light work, "on remand, the [ALJ] will surely find that anxiety is not a severe impairment and there will be no need to apply the special technique." (Doc. 15 at 16).

The Eleventh Circuit has summarized the ALL's responsibility in evaluating mental impairments as follows:

> [Social Security] regulations require the ALJ to use the "special technique" dictated by PRTF [Psychiatric Review Technique Form] for evaluating mental impairments. 20 C.F.R. 404.1520a(c)(3-3-4). This technique requires separate evaluations on a four-point scale of how the claimant's mental impairment impacts four functional areas: "activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." 20 C.F.R. 404.1520a(e)(2). . . .
>
> [W]here a claimant has presented a colorable claim of mental impairment, the social security regulations require the ALJ to complete a PRTF, append it to the decision, or incorporate its mode of analysis

12

> into his findings and conclusions.  Failure to do so requires remand.

Moore v. Barnhart, 405 F.3d 1208, 1213-1214 (11th Cir. 2005).

In Moore, the Eleventh Circuit reversed the judgment of the district court affirming the Commissioner's decision due to the ALJ's failure either to complete a PRTF or to incorporate its mode of analysis into his findings and conclusions.  The Eleventh Circuit ordered remand notwithstanding its determination that the ALJ's finding that the claimant retained the residual functional capacity to return to her past relevant work was supported by substantial evidence.  In Moore, the Commissioner argued that "remand [was] unnecessary as it would require no more than the ALJ's rote completion of the PRTF."  Id. The Eleventh Circuit disagreed, and noted that "The ALJ failed to even analyze or document Moore's condition in two of the PRTF's functional areas: social functioning and prior episodes of decompensation.  Because the ALJ's decision lacks consideration of these two factors and their impact on his ultimate conclusion as to Moore's RFC, we cannot even evaluate the Commissioner's contention that the ALJ's error was harmless." Id. at 1214.

In the case sub judice, the ALJ listed "anxiety" as one of Plaintiff's severe impairments; however, not only did he fail to apply the special technique required in 20 C.F.R. 404.1520a, but he neglected to include any discussion of its impact, or lack of impact.  In determining Plaintiff's severe impairments in the body

of the opinion, the ALJ observes the following:

> It is next necessary to establish whether the claimant has a "severe" impairment or combination of impairments. An impairment is severe within the meaning of the Regulations if it imposes significant restrictions on the ability to perform basic work activities. The evidence as a whole supports a finding that the claimant was diagnosed as having the physical impairments described **supra**, impairments which caused significant vocationally relevant limitations as of December 31, 2004.

(Tr. 14). In the "Findings" section of the ALJ's opinion, he sets forth the following with respect to Plaintiff's "severe" impairments:

> The medical evidence of record establishes that during the relevant period of time the claimant had high cholesterol, hypothyroidism, osteoarthritis, spastic bowel syndrome, and anxiety, impairments which are found to be severe but which did not meet or equal the criteria of any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4.

(Tr. 17).

The ALJ next determined that Plaintiff's severe impairments, did not meet a listing, either individually or in combination, that she was capable of performing a full range of light work without significant additional limitations, that her past relevant work as an owner/operator of a game room was light and semi-skilled in nature, and that Plaintiff could return to her past relevant work through the date she last met the special earnings requirements of the Act. (Tr. 17).

In determining Plaintiff's residual functional capacity, the ALJ made no mention of Plaintiff's anxiety. As noted supra, the

Commissioner contends that the ALJ did not mean to conclude anxiety was a severe impairment; however, based on the record, it is impossible for the court to determine what the ALJ intended.  The Commissioner's post-hac rationalizations cannot be used to affirm the ALJ's decision.  <u>Owens v. Heckler</u>, 748 F. 2d 1511, 1516 (11th Cir. 1984)("We decline....to affirm simply because some rationale might have supported the ALJ's conclusion.  Such an approach would not advance the ends of reasoned decision making.").  This is particularly true where the record contains some evidence, even if arguably slight, of a mental impairment.

When originally applying for benefits, Plaintiff alleged "nerves" as one of the impairments that prevents her from being able to work.  (Tr. 50).  Also, the evidence reflects that Plaintiff's treating physician, Dr. Browne, prescribed Xanax, Alprazolam, Klonopin, and Wellbutrin for Plaintiff before, during and after the relevant period.  (Tr. 139, 140, 152, 157, 160, 162, 177, 180, and 193).  Although there are some indications in the record that Plaintiff sought some of the medications to help her quit smoking, all of these medications are often used to treat anxiety. (162, 216).  It is also noteworthy that in March 1999, Dr. Browne observed that he was not sure that Plaintiff's crying spells were "hormonal" and diagnosed her with depression.  (Tr. 210).  Additionally, in August 2000, Dr. Browne diagnosed Plaintiff with anxiety.  (Tr. 194).  In 2001, Plaintiff reported that she felt

15

like her heart was "running away," and in 2002, she reported her "heart skipping with light-headness". (Tr. 191).  In February of 2005, just two months after the date Plaintiff was last insured, she again reported "nerve" problems and in March 2005, she requested to be placed back on Xanax because the Klonopin made her sleepy. (Tr. 161-162)  Seven months later, Plaintiff requested a referral to a psychiatrist.  (Tr. 145, 161).

Given the record before the Court, the undersigned cannot conclude that the ALJ's finding that Plaintiff's anxiety was a severe impairment was an "obvious error."  Accordingly, this case must be remanded[4].  Upon remand, the ALJ should clarify his findings with respect to Plaintiff's claim of a mental impairment. To the extent the ALJ determines that Plaintiff's anxiety did not rise to the level of a severe impairment, he should say so, and include the reasons for said finding. If he concludes that Plaintiff has presented at least a "colorable claim" of a mental impairment, he is required to employ the detailed method of analysis set forth in 20 C.F.R. 404.1520a.

## V. Conclusion

For the reasons set forth, and upon careful consideration of the administrative record and memoranda of the parties, it is recommended that the decision of the Commissioner of Social

---

[4]In view of the determination that this matter should be remanded, the undersigned has not addressed the remaining issue raised by Plaintiff.

Security, denying Plaintiff's claim for disability insurance benefits, is due to be Reversed and Remanded for further consideration.

**DONE** this **19th day of August, 2008.**

           **/s/ SONJA F. BIVINS**
          **UNITED STATES MAGISTRATE JUDGE**

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS
AND RESPONSIBILITIES FOLLOWING RECOMMENDATION
<u>AND FINDINGS CONCERNING NEED FOR TRANSCRIPT</u>**

1.   **<u>Objection</u>**.  Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the clerk of court. Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge.  <u>See</u> 28 U.S.C. § 636(b)(1)©; <u>Lewis v. Smith</u>, 855 F.2d 736, 738 (11th Cir. 1988).   The  procedure  for  challenging  the  findings  and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides, in part, that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

   A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.   **<u>Opposing party's response to the objection.</u>**  Any opposing party may submit a brief opposing the objection within ten (10) days of being served with a copy of the statement of objection. Fed. R. Civ. P. 72; SD ALA LR 72.4(b).

3.   **<u>Transcript (applicable where proceedings tape recorded)</u>**. Pursuant to 28 U.S.C. § 1915 and Fed.R.Civ.P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review.  Any party planning to object to

this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

                                          **/s/ SONJA F. BIVINS**
                                  **UNITED STATES MAGISTRATE JUDGE**